UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAVID LEFEVRE | * | CIVIL ACTION |
| VERSUS | * | NO: 05-6288 |
| BURL CAIN, WARDEN | * | SECTION: "J"(6) |

**ORDER AND REASONS**

This matter is before the court pursuant to the State's "Motion for *In Camera* Review and Supplementation of Record" (rec. doc. 50). For the following reasons, it is **HEREBY ORDERED** that the above-referenced motion is **DENIED**.

**BACKGROUND**

On February 3, 2000, petitioner's case was called before Twenty-Fourth Judicial District Court Judge Robert A Pitre, Jr.[1] At the time, petitioner was represented by John E. Benz, Esq. However, in response to the court's inquiry as to whether the litigants were "ready for trial", petitioner informed: "Your Honor, I'd like to ask for a motion to be filed to represent myself in this proceeding."[2] Thereafter, the following colloquy ensued:

---

[1]*See* State rec., vol. 5 of 8, p. 156.

[2]*See* State rec., vol. 5 of 8, p. 158, lines 18-21.

> THE COURT:
>   Mr. Lefeure, I don't - - the Court doesn't think that you're capable of conducting a trial on your own. The only way the Court will let you participate in your own defense is if Mr. Benz sits with you and advises you.
>
> MR. LEFEURE:
>   I'll accept his advice.
>
> THE COURT:
>   You understand that you're bound by the same rules of evidence that attorneys are bound by, when you represent yourself.
>
> MR. LEFEURE:
>   Yes, sir.[3]

Thereafter, petitioner moved to have his leg shackles removed. The trial court denied petitioner's motion, ordering that his handcuffs be removed, but not his leg shackles.[4]

After denying petitioner's motion, the court took opening statements from the prosecutor and from petitioner, along with testimony from two witnesses, Brenda Moore and Aubrey Cox. Later, the court inquired as to whether petitioner desired to reconsider his decision to serve as his own counsel.

> THE COURT:
>   Mr. Lefeure, do you want to reconsider your position with regard to representing yourself and let Mr. Benz assist you?
>
> MR. LEFEURE:
>   Not if I have to totally disband my right to speak, no, sir. You know, maybe if I could get Mr. Benz in a bigger role.

---

[3]*See* State rec., vol. 5 of 8, p. 158, lines 22-32; p. 159, lines 1-5.

[4]*See* State rec., vol. 5 of 8, p. 162, lines 1-7.

> THE COURT:
> > Well, that's between you and Mr. Benz.
>
> MR. BENZ:
> > I can only advise him.
>
> THE COURT:
> > All right. Go get the jury.[5]

## ANALYSIS

Pursuant to the instant habeas corpus application, petitioner claims violations of his Sixth Amendment right to self-representation and his Fourteenth Amendment right to due process. In support of these claims, petitioner has submitted a "Declaration" (rec. doc. 24-2) wherein, in enumerated paragraph 7, he states, in pertinent part:

> After several witnesses had testified, the judge asked me if I wanted to reconsider representing myself. I said I did not want to give up my right to speak totally but I wanted Mr. Benz to play a bigger role. Mr. Benz said he could only advise me and the judge dropped the subject and called the jury back. **Had the judge pursued the matter, I would have agreed to having Mr. Benz represent me**... [emphasis added].

By virtue of the above statement, petitioner essentially seeks to place blame upon the trial judge for his having to proceed to represent himself while wearing leg shackles, stating that if the judge had been more diligent in seeking to have him reconsider his decision, he would have acquiesced to having Mr. Benz represent him. The State, however, seeks to diffuse this blame by submitting evidence reflecting why petitioner dismissed Benz as his

---

[5]*See* State rec., vol. 5 of 8, p. 263, lines 22-32; p. 264, lines 1-5.

counsel.

Specifically, the evidence which the State seeks to admit, and which is the subject matter of the instant motion, consists of Mr. Benz's recollection of a pre-trial discussion he had with petitioner pursuant to which petitioner directed him to submit, at trial, "fabricated evidence" in the form of documents reflecting that petitioner knew one of the victims, Brenda Moore, prior to the incident at issue.[6] According to the State, it was Benz's refusal to perpetrate a fraud upon the court, in the form of submitting fabricated evidence, which led petitioner to decide to represent himself and no amount of persuasion, on the part of the trial court, could have prompted petitioner to change his mind in this regard.

Unlike the evidence at issue in connection with petitioner's motion to strike, which consisted of Mr. Benz's observations, the evidence at issue in connection with the instant motion is clearly a communication between attorney, John Benz, and his client, David Lefevre, and, therefore, protected under the attorney-client privilege. The purpose served by such a privilege is important, namely, the encouragement of "full and frank communication between attorneys and their clients". *United States v. Dyer*, 722 F.2d 174, 177 (5th Cir. 1983) (quotation omitted). However, given the fact that this important privilege can act "as an obstacle to the investigation of the truth", numerous exceptions to the privilege exist,

---

[6]As proof that the evidence was "fabricated", the State relies upon the testimony of Brenda Moore in which she states that she was not acquainted with Lefevre before the incident at issue. *See* State rec., vol. 5 of 8, pp. 222-229.

4

including the "fraud or crime" exception which applies "[w]here a client seeks to use an attorney to further a continuing or future crime or fraud". *Id.* (quotation and citation omitted).

To balance the competing interests of encouraging full and frank discussions between attorneys and their clients and attaining unfettered access to the truth, a court may weigh the relevance of the privileged communication. Generally, the attorney-client privilege should be upheld if the protected communication sought to be admitted is no more than marginally relevant. *Id.* at 178, *citing United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

An example of a court balancing the above-described competing interests by weighing the relevance of the privileged communication can be seen in *Dyer*, 722 F.2d at 176, wherein the attorney-client communication which the government sought to admit served as the linchpin of a superceding indictment which the government anticipated bringing against the defendant. Given the importance of the evidence, the Fifth Circuit concluded that the district court did not err in admitting the privileged communication based upon the "fraud or crime" exception. *Id.* at 178.

In contrast to the situation in *Dyer*, the State, in the instant matter, has expressed no

5

interest in pursuing criminal charges against petitioner based upon his privileged communication with Benz regarding his desire to admit into evidence allegedly fabricated evidence, evidence which was brought up at trial via petitioner's cross-examination of Brenda Moore.[7]  It was, in fact, after this evidence had been brought to the jury's attention via petitioner's cross-examination of Moore, that the trial court inquired as to whether petitioner desired to reconsider his decision to represent himself.[8]  Based upon this timing, it is unclear how the privileged communication which the State seeks to admit actually neutralizes petitioner's attestment to the effect that had the trial court, in connection with its reconsideration inquiry, "pursued the matter", he would have acquiesced to having John Benz represent him.  By the time the court inquired as to his desire to reconsider his representation decision, petitioner's conflict with Benz, as a result of Benz's refusal to introduce the allegedly fabricated evidence, was moot.  As such, the court finds the relevancy of the communication between Benz and petitioner to be no more than marginal and, therefore, insufficient for the purpose of overcoming the protection afforded under the attorney-client privilege.

     Accordingly;

     **IT IS HEREBY ORDERED** that the State's "Motion for *In Camera* Review and

---

[7] *See* State rec., vol. 5 of 8, pp. 223-229.

[8] *See* State rec., vol. 5 of 8, pp. 263-264.

Supplementation of Record" is **DENIED**.

New Orleans, Louisiana this 18th day of          March         , 2008.

_____
LOUIS MOORE, JR.
United States Magistrate Judge